IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MIA MAXWELL,                           :

      **Plaintiff,**                 :

                           :

**v.**                                 :     Civil Action No. 3:23-cv-472

                           :

                           :

**TUSKEGEE UNIVERSITY;**                :
**REGINALD RUFFIN in his official**     :
**and individual capacity; KYMBERLY**   :
**HOLLAND in her official and**         :
**Individual capacity,**                :

                           :

      **Defendants.**                :

RECEIVED
2023 AUG -8 P 1: 53
TREY GRANGER, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Mia Maxwell ("Plaintiff"), and hereby files this, her

Complaint alleging as follows:

### NATURE OF THE ACTION

1.

This is an action for declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendants' unlawful practices, including

discriminatory treatment, harassment, intimidation, libel, slander and unlawful

retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), Title IX of the Education

1

Amendments of 1972, as amended 20 U.S.C. §1681-§1688 (Title IX) and Alabama

State Law.

## THE PARTIES, JURISDICTION AND VENUE

2.

Plaintiff, Mia Maxwell, an employee of Tuskegee University, is a resident of

the State of Alabama, Macon County.  At all relevant times, she met the definition

of an "employee" under all applicable statutes.

3.

Defendant, Tuskegee University, is an independent and state-related land

grant institution of higher education located in Macon County, Alabama.  It

receives funding from the United States government.

4.

Reginald Ruffin is an individual above the age of nineteen (19) years and, on

information and belief, for the purposes of diversity, Defendant is a citizen of

Alabama.

5.

Kymberly Holland is an individual above the age of nineteen (19) years and,

on information and belief, for the purposes of diversity, Defendant is a citizen of

Alabama.

6.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under both Title VII and Title IX.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a), since the claims are so related to the claims in the Title VII and Title IX actions that they form part of the same case and controversy.

7.

Venue is proper under 28 U.S.C. § 1391 because the cause of action arose in Macon County, Alabama, which is situated within the district and divisional boundaries of the Middle District of Alabama.

**CONDITIONS PRECEDENT**

8.

Plaintiff has complied with all statutory prerequisites to her Title VII claim, having alleged discrimination on the basis of sex through a charge with the Equal Employment Opportunity Commission ("EEOC") on or about November 21, 2022 attached hereto as Exhibit "A".

9.

The EEOC issued a Notice of Right to Sue on June 23, 2023 and this action was instituted within ninety (90) days of receipt thereof.  A copy of the Right to Sue is attached hereto as Exhibit "B".

## FACTUAL ALLEGATIONS

10.

Mia Maxwell began working at Tuskegee University as a Title IX Coordinator in November 2021.

11.

At the onset of her employment at Tuskegee University, Ms. Maxwell reported directly to the university's General Counsel, Mr. Charles Johnson.

12.

Mr. Johnson retired from the university at the end of December 2021.  In January 2022, Ms. Crystal James was brought on as the new General Counsel.

13.

In May 2022, upon receipt of a complaint related to actions taken by Ms. James which, later became the basis for a lawsuit against the university, the Alabama State Bar notified Ms. James that she was not allowed to serve as General Counsel for Tuskegee University until she was registered and approved for admission as In-House Counsel.

4

14.

In response, Ms. James notified the Alabama State Bar of Ms. Maxwell's

status as an attorney employed by Tuskegee University as the Title IX Coordinator.

Although the Alabama State Bar did not require In-House Counsel registration and

approval for the Title IX Coordinator, Ms. James directed Ms. Maxwell to register

with the Alabama State Bar as In-House Counsel.  Ms. Maxwell complied and

became Authorized House Counsel in Alabama with all fees associated with the

registration and approval covered by the university.

15.

During this time, discussions were had between Ms. James and Ms. Maxwell

with regard to becoming licensed to practice law in Alabama.  It was agreed that

like the Authorized House Counsel fees, the fees associated with becoming

licensed to practice law in Alabama would be covered by the university.

16.

Ms. Maxwell completed the Alabama State Bar application for admission

based on reciprocity.  Upon completion of the bar application, the university

refused to cover the fees citing as justification that Ms. Maxwell's position did not

require a license to practice law.  Nothing changed with regard to Ms. Maxwell's

position from the time she was directed to both become Authorized House Counsel

and apply for admission to the Alabama State Bar, except the events detailed

below.

17.

In July 2022, upon becoming aware of a conflict of interest in having the

Title IX Coordinator reporting directly to the General Counsel, Ms. Maxwell along

with other employees, including General Counsel Ms. James, submitted a report

and recommendation to the President of Tuskegee University ("President")

detailing the conflict of interest and proposing a solution.

18.

In December 2022, the President notified Ms. Maxwell that she agreed with

the assessment provided regarding the conflict and in accordance therewith

changed the reporting structure for the Title IX Coordinator.  The new structure

directed the Title IX Coordinator to report to the President through the university

Chief Operating Officer, Dr. Rolundus Rice.  The President's letter noted a prior

attempt at setting up a meeting.  Ms. Maxwell never received notice of a meeting

either directly or through her direct supervisor at the time, the university's General

Counsel Ms. James.

19.

In the interim time between the notice of conflict of interest and the change

in reporting structure, several events occurred forming the basis for the current

cause of action.

20.

The first event in July 2022 involved a student athlete who reported an issue

to Ms. Maxwell regarding the process surrounding the non-renewal of said

student's grant-in-aid.  In the report, the student questioned whether the process

was compliant with NCAA bylaws.  Specifically, the student reported that he did

not receive prompt written notice of a decision to not renew his aid.

21.

After review of the applicable NCAA by-law, the university Athletic

Director and Head Football Coach, Mr. Reginald Ruffin, was contacted and

notified of the purported error and potential compliance issue regarding the by-law.

Ms. Maxwell's direct supervisor, Crystal James, who despite the directive of the

Alabama State Bar, continued to act as the university's General Counsel was

copied on the correspondence.

22.

Mr. Ruffin responded stating that "this is going to get ugly." Mr. Ruffin further stated that based on Ms. Maxwell's suggestion that he violated NCAA rules, he needed to cover himself to protect his career because the situation did not look good. Mr. Ruffin also stated, he wanted to contact the NCAA regarding the alleged violation.

23.

Ms. James, the university's General Counsel and Ms. Maxwell's direct supervisor responded to Mr. Ruffin's e-mail advising that no disclosure was to be made to the NCAA. Ms. James did not address Mr. Ruffin's threatening language.

24.

A second event in August 2022 involved a report by a student to the Title IX Coordinator regarding a claim of sexual harassment against a football coach for whom the student was working for as a work study student.

25.

Upon receipt of the report, Ms. Maxwell contacted the accused coach's direct supervisor who at the time was Mr. Ruffin. While explaining to Mr. Ruffin the reason for the visit, Mr. Ruffin made several derogatory and misogynistic comments about the manner in which the particular young woman and other women on campus dress. Mr. Ruffin went on to address situations in which

women attempt to cause trouble for men and explained that he does not take meetings alone with women in his office for that reason. It was not lost on Ms. Maxwell that she was alone in the office with Mr. Ruffin while he made this statement.

26.

Immediately after meeting with Mr. Ruffin, Ms. Maxwell met with the football coaching staff and the individual coach accused of sexual harassment.

27.

The accused coach was notified of the report and advised on the Title IX complaint grievance process. The accused coach inquired about the effect of the accusations on his job and his family.

28.

The accused coach was advised by Ms. Maxwell that said discussions should be made with his spouse and supervisor. The accused coach was further advised that if he felt the need to leave work during the pendency of the investigation he should notify his supervisor, Mr. Ruffin.

29.

The day after meeting with Mr. Ruffin and the accused coach, Mr. Ruffin sent an e-mail message to the both the university President and Ms. James, the

university General Counsel.  In said e-mail, Mr. Ruffin inquired about the

existence of a Title IX investigation of which, he was already made aware.

Further, Mr. Ruffin falsely accused Ms. Maxwell telling the accused coach that he

needed to go home.

30.

After receiving two intimidating e-mails from Mr. Ruffin containing

threatening language, false representations and interference with Title IX matters,

Ms. Maxwell filed a complaint with the Tuskegee University Human Resources

Office.

31.

Ms. Maxwell was interviewed about the complaint by the Chief Human

Resources Officer, Ms. Cassandra Tarver-Ross and the Chief Audit Executive, Ms.

Brittany Mills Foster.

32.

During the pendency of the internal investigation the university Provost, Dr.

S. Keith Hargrove spoke with Ms. Maxwell about the inappropriate actions of Mr.

Ruffin.  Dr. Hargrove informed Ms. Maxwell that he would have a discussion with

Mr. Ruffin.

33.

Without regard to the administration's admission of Mr. Ruffin's wrongful conduct, Ms. Maxwell received a letter notifying her that her complaint against Mr. Ruffin was to be closed due to the allegations being unsubstantiated.

34.

On several occasions, university staff member Kymberly Holland communicated to a Tuskegee University Board of Trustees member that Ms. Maxwell made false allegations against Mr. Ruffin without any consequence from the university.

35.

Ms. Maxwell subsequently filed a Charge of Discrimination with EEOC following the closure of the university's internal complaint.

36.

In addition to the two events regarding students and the Athletics Department other reports were made to the Title IX Coordinator during the interim period between the notification to the President regarding the conflict of interest in the reporting structure and the time in which said reporting structure was changed. The other reports and actions taken subsequent thereto also lead to the filing of this case.

37.

In November 2022 a student reported an allegation of rape that was
presented to the Title IX Coordinator.  The accused student was arrested and
charged.  Following the regulation promulgated for the implementation of Title IX,
Ms. Maxwell, Title IX Coordinator, initiated the university's process for
responding to incidents covered by Title IX law.

38.

Prior to the conclusion of the grievance process, Ms. James, the university's
General Counsel and Ms. Maxwell's direct supervisor at the time, directed Ms.
Maxwell to disregard the accused student's rights protected by Title IX and
proceed with the process of having the accused student expelled from the
university.  Ms. Maxwell refused the directive, citing the regulatory requirements
for the grievance process to be completed before the implementation of
disciplinary sanctions against an accused student.  Ms. James became visibly upset
with Ms. Maxwell and left Ms. Maxwell's office after intimating there would be
consequences for refusing the directive.

39.

In violation of both Title IX and other university policy, at the direction of
Ms. James, the accused student was expelled from the university prior to the

completion of the Title IX grievance process for which Ms. Maxwell is responsible for coordinating.

40.

During the fall of 2022 the Office of Title IX was responding to group of students who presented issues with respect to the university's historical responses to Title IX incidents.  Following a protest led by students, the university hosted a town hall meeting to address the issues presented by the group.

41.

Based on her position as Title IX Coordinator, Ms. Maxwell was invited to participate in the town hall meeting.  After preparing responses and attending the meeting to address the issues, Ms. Maxwell was informed during the meeting that Ms. James, the university General Counsel would provide responses for the Title IX Coordinator.

42.

Despite knowledge of the known conflict of interest between the Office of General Counsel and the Office of Title IX, Ms. James continued to be directly involved in Title IX matters taking a position in direct opposition of Ms. Maxwell, the Title IX Coordinator and expressing the oppositional positions to both the President and other members of the university administration.  Allegations of Ms.

James' involvement in Title IX matters is currently under investigation by the Department of Education's Office of Civil Rights.

43.

While Ms. Maxwell was out on sick leave, Ms. James initiated meetings with the students who organized the student protest.  Upon Ms. Maxwell's return from sick leave she joined subsequent meetings with the students and Ms. James.

44.

During a meeting with the students and Ms. James, Ms. James rolled her eyes while Ms. Maxwell and the students spoke and appeared visibly annoyed and hostile during the zoom meeting.  Ms. James also moved into the office space next to Plaintiff used for trainings and Title IX hearings thereby creating a situation where there was no physical separation between Title IX and the Office of General Counsel, despite the conflict of interest.

45.

Both prior to and upon the conclusion of the EEOC investigation, and issuance of the Notice of Right to Sue, Tuskegee University made no effort to remedy the discrimination, harassment, intimidation and retaliation set forth in Plaintiff's complaint to the EEOC.

46.

Plaintiff has been continually excluded from opportunities to train students thereby making it difficult to successfully complete her job duties.

## CAUSES OF ACTION

### Count 1

### Discrimination Harassment and Intimidation in Violation of Title VII

47.

Plaintiff hereby repeats, re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 45, inclusive, as if fully set forth herein.

48.

Defendant Tuskegee University has discriminated against Plaintiff on the basis of her sex, in violation of Title VII by failing to provide a work environment free from unlawful discrimination, harassment and intimidation and by failing to take any corrective active regarding the discrimination, harassment and intimidation by Reginald Ruffin directed at Plaintiff on the basis of her sex.

49.

As a direct and proximate result of the unlawful discriminatory conduct, harassment and intimidation which, was malicious, willful and wanton, and Tuskegee University's failure to take action to ensure that the discriminatory

15

conduct, harassment and intimidation ceased, it has become more difficult for Plaintiff to successfully do her job which, involves interaction with the Athletics Department.  Plaintiff has suffered harm and is therefore entitled to an award of compensatory and punitive damages along with other relief against Tuskegee University and Reginald Ruffin.

## Count 2

## Retaliation in Violation of Title VII

### 50.

Plaintiff hereby repeats, re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 48, inclusive, as if fully set forth herein.

### 51.

Defendant Tuskegee University has retaliated against Plaintiff by *inter alia*, refusing to cover Plaintiff's expenses connected to becoming licensed to practice law in Alabama, interfering with Plaintiff's position as the Title IX Coordinator, threatening reprisal for Plaintiff's participation in protected activities and creating a hostile work environment.

### 52.

Tuskegee University retaliated against Plaintiff by ignoring her valid complaint of discrimination, harassment and intimidation on the basis of sex by

creating a hostile work environment where other university personnel knew of the threat and promised to take corrective action which never occurred.

53.

As a direct and proximate result of Tuskegee University's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered harm and is therefore entitled to an award of compensatory and punitive damages along with other relief against Tuskegee University.  The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her sex.

## Count 3

## Retaliation in Violation of Title IX

54.

Plaintiff hereby repeats, re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 51, inclusive, as if fully set forth herein.

55.

As the Title IX Coordinator for Tuskegee University, Plaintiff is responsible for coordinating the university's compliance with Title IX by training faculty, staff and students and administering the university's grievance procedures for resolving Title IX complaints.

56.

As alleged *supra*, the university's Athletic Director used threatening

language directed at Plaintiff, the Title IX Coordinator, in an e-mail in response to

Plaintiff's handling of a report from a student athlete.  The threat made in response

to Plaintiff's handling of the report was clearly a tactic to intimidate Plaintiff and

interfere with the Title IX process.

57.

During the coordination of another Title IX grievance process, the Athletic

Director again interfered with the Title IX process in retaliation for Plaintiff's

handling of the complaint.  In this instance, in attempt to control the outcome of a

process involving one of his direct subordinates, the Athletic Director

misrepresented the actions of Plaintiff by falsely accusing her of violating

university policy.

58.

As alleged *supra*, despite guidance from the Office of Civil Rights on the

potential conflicts of having Title IX overseen by the General Counsel, the General

Counsel directed Plaintiff to take action inconsistent with Title IX regulations and

retaliated against Plaintiff when she refused to take said action.  Examples of

retaliatory conduct include but are not limited to, the failure to cover promised

expenses, the taking of office space used by Plaintiff for trainings and Title IX

hearings and interfering with the Title IX grievance process of other parties.

59.

Tuskegee University had the authority to initiate corrective action in each of

the above described scenarios in response to the retaliatory conduct of both Crystal

James, the university's General Counsel and Reginald Ruffin, the university's

Athletic Director.

60.

Tuskegee University retaliated against Plaintiff by ignoring her valid

complaints of retaliation and failing to initiate any corrective action in response to

the complaints regarding the retaliatory conduct.

61.

Tuskegee University acted with deliberate indifference to its sufficient,

actual notice of the retaliatory conduct related to Plaintiff's involvement in

protected Title IX activities and as a result of her complaints continually subjected

her to a hostile work environment.

62.

As a direct and proximate result of Tuskegee University's unlawful

retaliatory conduct in violation of Title IX, Plaintiff has Plaintiff has suffered harm

and is therefore entitled to an award of compensatory and punitive damages along with other relief against Tuskegee University.

## Count 4

### Libel and Slander in Violation of Ala. Code §6-5-182

63.

Plaintiff hereby repeats, re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 60, inclusive, as if fully set forth herein.

64.

Defendant Reginald Ruffin defamed Plaintiff by publishing with malice communications as facts to third parties that are false and defamatory regarding Plaintiff's management of a Title IX claim in her professional capacity as the Title IX Coordinator causing harm to her professional reputation.

65.

Defendant Kymberly Holland defamed Plaintiff by stating to a third party as fact that Plaintiff lied about her complaints against Reginald Ruffin.   Said false and defamatory statement was made with malice to cause harm to Plaintiff's professional reputation.

66.

As a direct and proximate result of Defendant Ruffin's and Defendant Holland's unlawful defamation Plaintiff has suffered harm and is therefore entitled to an award of compensatory and punitive damages along with other relief against said Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order which will:

a. Declare the conduct engaged in by the Defendants to be unlawful and in violation of Plaintiff's rights;

b. Enter appropriate declaratory and injunctive relief;

c. Award Plaintiff compensatory damages against the Defendants, in an amount that will fully compensate her for the injuries, distress, anguish, pain, humiliation, embarrassment, suffering, and concern that she has endured as a direct and/or proximate result of the violations of law as set out herein;

d. Enter a judgment against Defendants for such punitive damages as will properly punish Defendants for the statutory and common law violations as alleged herein against Plaintiff, in an amount that will serve as a deterrent to Defendants and others from engaging in similar conduct in the future;

e. Award Plaintiff pre-judgment and post-judgment interest at the highest rate allowable by law;

f. Award Plaintiff costs and fees associated with this action;

g. Assume continuing and indefinite jurisdiction to ensure compliance with the terms of the Orders requested herein; and

h. Award Plaintiff such other and further relief, including equitable relief, this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: August 8, 2023

Respectfully submitted,

By: *Mia Maxwell /s/*
     Mia Maxwell

109 Brown Street
Tuskegee, AL 36083

Proceeding *Pro Se*